MORGAN ENGINEERING COMPANY v. CACHE RIVER DRAINAGE DISTRICT.

Opinion delivered March 6, 1916.

1.   DRAINAGE DISTRICTS—BOUNDARIES—INCOMPLETE DESCRIPTION—INVALIDITY.—An act creating a drainage district will be held void for uncertainty where the description used in the act does not enclose the property attempted to be described, and where, from the language of the act, there is no way of closing the boundaries without doing violence to the plain and unequivocal words used in the statute.

2.   APPEAL AND ERROR—REVERSAL AND REMAND OF CAUSE "FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THE OPINION."—When on an appeal or writ of error, a cause is reversed and remanded for new

trial, the case stands as if no action had been taken by the lower court; if the facts developed on the second trial remain the same as they were on the first trial, the lower court must be governed in applying the law to the facts by the principles announced by this court in that case which are controlling; if the facts are different, then the lower court may apply a different rule of law.

3. STATUTES—VOID STATUTE—VALIDATING ACT—EFFECT—IMPROVEMENT DISTRICTS.—An act attempting to create an improvement district, which was void *ab initio*, because of uncertainty in the description of the boundaries of the proposed district, will not be rendered valid by the subsequent passage of another act, repealing the former in express terms and providing for the payment of the district's obligations.

Appeal from Craighead Circuit Court, Jonesboro District; *J. F. Gautney,* Judge; affirmed.

### STATEMENT BY THE COURT.

The Legislature of 1911 passed an act creating the Cache River Drainage District (Act No. 457, Special Acts of 1911, page 1245). Section 1 of which provides: ''A drainage and levee district is hereby created and established in the counties of Craighead, Jackson and Lawrence to consist of and contain all that territory in said counties including and bounded by the following lines:

''Commencing at the north boundary line of Craighead County at a point where section line between sections 3 and 4 intersects the said boundary lines; thence south on said section line between sections 3, 4 and 9, and 10, 16 and 15, 21 and 22, 28 and 27, 33 and 34, township 15 north, range 3 east, to where it intersects the south boundary line; thence west on said township line to the northeast corner of section 1, township 14 north, range 2 east; thence south on range line to south line of section 18, township 14 north, range 3 east; thence east one mile to the southeast corner of section 18; thence south on section line between sections 19 and 20, 29 and 30, 31 and 32, to the south township line; thence west on said township line to St. Louis Southwestern Railroad Company; thence in a southwesterly direction along said railroad to the southeast corner of section 12, township 13 north, range 2 east; thence west on south section line of said

section 12, and on section lines between sections 11 and 14, 10 and 15, 9 and 16, 8 and 17 and 18 to where it intersects range line between ranges 1 and 2; thence south on said range line to south boundary line of Craighead County; thence west on south boundary line of Craighead County to the southwest corner of said county; thence west on the south boundary line of township 13 to range line between ranges 2 and 3, Jackson County; thence north on said range line intersecting the boundary line between Lawrence and Jackson county, to the St. Louis, Iron Mountain & Southern Railway Company; thence in a northeasterly direction with the railroad to where it intersects township line between townships 15 and 16 north, range 1 east, in Lawrence County; thence east on said township line to the northwest corner of Craighead County; thence east on the north boundary line of said Craighead County to the point of beginning.''

The board of directors of the district entered into a contract with the appellant to do the engineering work for the district. The appellant entered upon the work under this employment and continued as the engineer of the district until the General Assembly of 1913 repealed the act of 1911, referred to above (see Acts 1913, page 512). The appellant held warrants for its services, issued by the board of directors on the treasurer of the district for the sum of $15,652, which it presented to the county court of Craighead County, pursuant to the provisions made by the repealing act of 1913. It set up its contract, alleged that it performed the work, which had been liquidated by the issuance to it of the warrants covering the sum above claimed, and asked that these warrants be allowed and paid.

Certain land owners intervened and contested appellant's claim on the ground that the amount claimed under the contract was excessive and that under the repealing act appellant could only recover upon *quantum meruit*. The county court reduced appellant's claim and it appealed to the circuit court. The case was there tried before a jury, and from a judgment rendered in the cir-

cuit court both parties appealed to this court. So this is the second appeal. *Morgan Engineering Co.* v. *Cache River Drainage District,* 172 S. W. 1020, 115 Ark. 437.

On the former appeal we stated the issues between the respective parties as follows:

"It is the contention of the drainage district that under the terms of the repealing act the engineering company could recover only such compensation as the jury might find reasonable; on the other hand, the engineering company contends that its compensation should be measured by the terms of the contract, and that having done all the preliminary work required under the act it was entitled to recover from the drainage district 2 per cent. of the estimated cost of construction of the whole work."

We held on the former appeal that the compensation of the appellant should be measured by the terms of the contract, and not upon *quantum meruit.* The court reversed and remanded the cause for errors in the trial court's instructions which resulted in an erroneous verdict. In the opinion we prescribed the correct rule for ascertaining the amount due appellant and remanded the cause for "further proceedings in accordance with" the opinion.

On retrial the interveners, by leave of the court, filed additional exceptions to the claim of appellant, setting up that the original act creating the drainage district was void for uncertainty, in that the metes and bounds set forth in the act did not describe any particular territory; and the interveners alleged that the board of directors therefore had no authority to enter into a contract with the engineering company, and that consequently there was no lien existing on the lands of the interveners, and that the Legislature had no power to fix a lien on the same.

Substantially the same testimony was adduced at the last trial as in the first, and in addition Morgan, an expert engineer, testified in part as follows:

"The description of the boundaries of the Cache River Drainage District as given in Act No. 457 of the Special Acts of 1911, contains a typographical error in this way: The act states, 'Thence west on the south boundary line of Craighead County to the southwest corner of said county; thence west on the south boundary line of township 13 to range line between ranges 2 and 3, Jackson County.' Now that figure '3'—if the figure '3' were read a figure '1' the entire description would be made intelligible, because the act reads further: 'Thence north on said range line intersecting the boundary line between Lawrence and Jackson Counties,' which call would be properly carried out by changing the figure ''3'' to a figure '1,' but it is not properly carried out by leaving the figure '3,' because in the latter case the line is carried to a point that does not touch Lawrence County." He was asked, "What county would it touch," and answered, "Independence County."

The appellant presented the following requests for declarations of law:

"1st.   That all matters and questions which were made or might have been made on the former trial can not be properly made here, but that this proceeding must relate solely to matters left open by the opinion of the Supreme Court.

"2nd.   That the act of 1913, repealing the act creating the Cache River Drainage District is more than a curative act, and is in fact a legislative levy against the lands included in the assessment, and that such a levy is valid regardless of any imperfection or infirmity in the description in the original act.

The court refused these requests, and, over the objection of appellant, made, among others, the following findings of fact:

"3rd.   The act of 1911 is void for uncertainty.

"4th.   There is nothing in the repealing act which in any manner attempts to cure any defect in the original act," and declared the law to be that the act creating the Cache River Drainage District "is void for failure to

define the boundaries of the district with certainty, and that the act of 1913, repealing the above mentioned act, does not cure the uncertainty of said original act," and rendered a judgment in favor of the appellees, from which appellant has duly prosecuted this appeal.

*Allen Hughes,* for appellant.

1. This is an action upon a contract. The decision of this court upon the former appeal is that appellant was entitled to recover. It is conclusive. The former decision is conclusive where the facts are not different. Black on Jud. Prec. p. 283; 79 Ark. 185; 14 *Id.* 427, 621; 85 *Id.* 158; 92 *Id.* 554; 97 *Id.* 147; 104 Ark. 459; 108 U. S. 101 and many others, etc.; 152 Wisc. 589; 124 Fed. 171; 211 Ill. 183; 132 N. C. 86; 97 Ark. 147; 116 U. S. 567.

2. The description of the district is sufficient. 93 Ark. 168. But, if defective, the Legislature had power to authorize the assessment of the lands benefited. 107 Ark. 285; 113 *Id.* 363; 119 Ark. 188. If the creating act was invalid the provision in the repealing act for compensation would nevertheless be good. 83 Ark. 344; 170 U. S. 45; 98 *Id.* 113.

3. It is too late to raise the point of misdescription That is settled. No new evidence was offered on the trial. The act is a public act and the court takes judicial cognizance of such. 4 Wigmore on Ev. § 2572; 19 Ark. 630; 23 *Id.* 387.

4. The description is sufficient. There is a perfect identification of the lands subject to assessment. 107 Ark. 285; 113 *Id.* 363; 119 Ark. 188. The act amounts to a legislative levy and is a valid exercise of legislative power. 83 Ark. 344; 98 *Id.* 113.

*Hawthorne & Hawthorne* and *D. K. Hawthorne,* for appellees.

1. The act is void for uncertainty. 105 Ark. 308; 118 Ark. 119. The question of jurisdiction may be raised at any time. Here there was a void district, a void contract and there can be no recovery. 90 Ark. 195; 88 *Id.* 1; 70 *Id.* 346; 48 *Id.* 151.

2.  The act of 1913, repealing the act of 1911 is also void in that it attempts to place an undue burden upon the property, by exempting property of railroads, public roads, tram roads and town lots within the original district.  48 Ark. 370; 96 *Id.* 419.

3.  Interveners are not estopped.  52 Ark. 473; 79 *Id.* 475.  On a reversal the case stands as if no action had been taken by the lower court.  29 Ark. 85; 73 *Id.* 513; 119 Ark. 188.

WOOD, J. (after stating the facts).  (1)  In its opinion the learned trial court states as follows:  "The act of 1911 is void for want of a definite description of the boundary of said district.  An examination of the public maps and surveys of the State will show that there is no possible certain way of closing the boundaries of said district without doing violence to the plain and unequivocal words used in the statute.  It is doubtful whether it was intended by the statute to use as a boundary the range line between 2 and 3 in Jackson County, 2 and 1 in Jackson County, or 1 east and 1 west, between Jackson and Craighead Counties.  It is certain that if the range line between 2 and 3 in Jackson County is followed north that no point on the Iron Mountain Railway can be reached.  It follows that the attempted description of the drainage district is void for uncertainty.  Therefore, no act or contract of the directors would have any validity.  The repealing act, treated as a curative act, does not attempt to make certain the boundaries of the district, and as a curative act, can not do more than cure irregularities.  The Legislature would be without power to create a drainage district having no boundaries; therefore, the repealing act would not cure the void act referred to."

These conclusions of the learned trial judge are correct and we hereby adopt and approve them as our own.

In *Ferrell* v. *Keel*, 105 Ark. 380-392, this court had under review an act creating a certain levee district, in which the boundaries of the district were not any more accurately defined than they are in the present case.  In that

case we said: "We understand the law to be, that, when the Legislature creates a levee or other improvement district, it must define its boundaries with certainty, or provide for the same being done by some other agency. The Legislature undertook to define the limits of this district. We have carefully considered the act, and hold that it fails to define the limits of the district with sufficient certainty to determine what lands are included therein." Then, after setting out the defects, the court continues: "There are other defects in the description, but we do not discuss them, as those already mentioned are sufficient to defeat the act for uncertainty in the description of the territory proposed to be embraced therein. We hold the act invalid for this reason." So here.

Counsel for appellant says: "The act calls for the range line between 2 and 3 running to south line of Lawrence County. That line does not run to the monument named. No range line between 3 and any other township whatever, and no range line between 2 and any other township whatever except 1 would reach the south line of Lawrence County. No other range line in the district would do so. We can not make the call mean anything without making it mean the range line between 1 and 2, and so construed it harmonizes with the remainder of the description."

To make such a radical change in the language of an act of the Legislature as is here pointed out in order to make certain the description of the boundaries of an improvement district is purely a legislative, and not a judicial function. There is nothing to indicate that the defective description was a mere clerical misprision, and we find no authority in any of the canons of construction that would justify us in substituting entirely different words and figures for those actually used by the Legislature in order to effectuate what we might conceive to be the legislative purpose. To do so would be to ignore the language actually employed by the Legislature and to substitute therefor our own. The inten-

tion must be gathered, mainly, from the language of the act itself. *State* v. *Lancashire Ins. Co.,* 66 Ark. 466-72.

(2)   In reversing the case on the former appeal we said: ''The court should have taken proof of the value of the services under the contract which had been performed by the engineering company at the time the repealing act was passed, and should have found for the engineering company for that amount.''

Counsel for apellant contends that the circuit court was foreclosed, on the last trial, by the above language, from inquiring into the validity of the contract, because such language was an adjudication of the binding effect of the contract, and that appellees are bound by the above language under the doctrine that such language, whether right or wrong, was the ''law of the case.'' And he cites numerous authorities upon which he relies, among others, the following: *Scott* v. *Fowler,* 14 Ark. 427; *Yell* v. *Outlaw,* 14 Ark. 621; *Hollingsworth* v. *McAndrew,* 79 Ark. 185; *National Surety Co.* v. *Long,* 85 Ark. 158; *St. Louis, I. M. & S. Ry. Co.* v. *York,* 92 Ark. 554; *Lewis* v. *Jones,* 97 Ark. 147.

These decisions but announce and adhere to the rule that where an issue has been raised in the court below and has been finally adjudicated on appeal to the Supreme Court, the same issue cannot be re-opened on another trial in the circuit court, and that where a cause, on the former appeal, is reversed and remanded for a new trial, if there was not any material change in the second trial from the testimony and facts established in the first trial, the principle of law announced as applicable to those facts in the first trial must also prevail in the second, even though this court should conclude on the second appeal that the principles of law announced on the first appeal were erroneous. *Lewis* v. *Jones, supra; Westerfeld* v. *New York Life Ins. Co.,* 107 Pac. 699.

But this doctrine can have no application here for the reason that on the former appeal the judgment was reversed because the court erred in its instructions to the jury, and the case was remanded with directions,

not "to render judgment in accordance with the opinion," but, for "further proceedings in accordance with the opinion." There is a marked distinction between the two. "Further proceedings" contemplated that there was to be a new trial on the issues that might be presented, and that proof might be introduced on these issues. The order was in effect a remand for a new trial in general. Of course, all further proceedings that were to be had were to be in accord with the opinion, and if the issues on the second trial and the testimony remained substantially the same, then the appellant would have been entitled to a judgment for the value of its services under the terms of the alleged contract under which it claimed, computed in the manner directed by this court in its opinion on the former appeal. But, as was said in *St. Louis, Iron Mountain & Southern Ry. Co.* v. *York, supra,* "The finding of the facts upon the former appeal can not be binding as the finding of facts in this second trial, because the testimony on the second trial might be different from or additional to that given on the first trial. But the principles of law determined and announced upon the former appeal are binding, and must stand as the law of this case; and if the testimony upon this second trial is substantially the same as on the first trial, then the former decision of this court upon all questions of law involved in this case must be followed on this appeal."

In the case of *Hollingsworth* v. *McAndrews, supra,* relied on by appellant, "the case was not reversed and remanded for a new trial," or for further proceedings, but with instructions to the lower court "to render judgment in accordance with the opinion."

The rule of law which controls here is as follows: "When, on an appeal or writ of error, a cause is reversed and remanded for new trial, the case stands as if no action had been taken by the lower court. If the facts developed on second trial remain the same as they were on the first trial, the lower court must be governed in applying the law to the facts, by the principles an-

nounced by this court in that case as controlling. If the facts are different, then the lower court may apply a different rule of law," *Hartford Fire Ins. Co.* v. *Enoch,* 79 Ark. 475.

Now, on the first trial the appellees, interveners, did not challenge the validity of the drainage district, and they introduced no evidence to show that the district was invalid. Their contention was that under the act abolishing the district the appellant should be allowed to recover only such conpensation as the jury might find reasonable. They did not directly call in issue appellant's contract, but only claimed that it was not entitled to recover under it. On the last trial the issues were entirely changed. By permission of the court the appellees were permitted to put forth an entirely new defense to appellant's claim, and to set up that, the district being void for uncertainty, the directors had no authority to enter into a contract with appellant, and that therefore such contract was void, and that appellants were not liable at all, and they introduced evidence to sustain their contention. Thus the issues and the facts on the last trial were entirely different from what they were on the former appeal, and hence what was said by us in the former opinion as to the contract and its binding effect would not be law applicable to the changed issues and facts as discovered by this record.

(3)  Counsel for appellant contends that, although all the prior proceedings were invalid, yet the general assembly had power to pass the act of 1913 abolishing the district and directing a levy upon the lands intended to be benefited for the preliminary expenses incurred under the alleged contract with the appellant, and that the act levying the assessment for this purpose adopted the description of the lands as assessed, and that therefore this latter act was not void for uncertainty. Citing, *Board of Dir. Crawford Co. Levee Dist.* v. *Dunbar,* 107 Ark. 285; *Fellows* v. *McHaney,* 113 Ark. 363, 371; *Thibault* v. *McHaney,* 119 Ark. 188, 177 S. W. 877. We can not agree with this contention of counsel, for the act

of 1911, purporting to create the Cache River Drainage District, as we have seen, was void *ab initio* because of the uncertainty in the description of the boundaries of such district. In the cases cited by appellant to support its contention the acts creating the districts were valid acts, and the districts were therefore legally brought into existence, and there was authority for incurring the preliminary expenses in forwarding and promoting the improvement contemplated. But such was not the case here.

The act of 1913 did not purport to and could not cure the defects of description in the act of 1911 that rendered the so-called Cache River Drainage District void for uncertainty; and it was not within the power of the Legislature of 1913 to validate contracts made with those acting in the capacity of directors of a district that never had in fact any existence and to make the preliminary expenses incurred under these void contracts liabilities against the land included in the proposed district. To do this would be taking property of the appellees and other land owners without due process of law and without compensation.

It follows that the court did not err in refusing appellant's request for declarations of law, and did not err in the findings of fact and declarations of law made by it, and its judgment in favor of the appellees is correct and must therefore be affirmed.